(93 South. 79)

## WINDOM v. STATE.   (7 Div. 770.) *

(Court of Appeals of Alabama.   Feb. 7, 1922. Rehearing Denied April 4, 1922.)

1. Criminal law ⬅️1066—Denial of new trial not reviewable, unless excepted to.

Under Acts 1915, p. 722, amending Code 1907, § 2846, a motion for a new trial cannot be considered on appeal, in the absence of an exception to the order overruling it.

2. Homicide ⬅️203(3)—Evidence held to make sufficient predicate for dying declarations.

Evidence that deceased, after receiving a mortal wound, said several times that he would die as a result thereof, evidencing a knowledge and belief in his impending death, constituted a sufficient predicate for dying declarations.

3. Homicide ⬅️207—Admission of written dying declaration does not exclude evidence of verbal declarations.

The admission of a dying declaration, reduced to writing and signed, did not preclude the admission of other verbal statements made by deceased; a proper predicate having been laid.

4. Homicide ⬅️338(1)—Oral testimony as to contents of writing containing dying declaration held harmless.

Where dying declaration reduced to writing was admitted in evidence, verbal testimony as to contents of the writing did not injuriously affect defendant's rights, whether it agreed with the writing or varied therefrom.

5. Criminal law ⬅️366(2)—What deceased did after being told that defendant had drawn a pistol on his sons held admissible as res gestæ.

What deceased did in preparation for an affray with defendant, after being notified that defendant had drawn a pistol on his sons, held

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 101.          *Certiorari denied 93 South. 924.

so close in point of time and place as to be a part of the res gestæ.

**6. Criminal law ⊚⟳1170½(2) — Question on cross-examination not prejudicial, in view of answer.**

On trial for murder, question asked defendant, on cross-examination, whether he had been picking cotton, *held* harmless, where he answered that he had; the answer, if material, being beneficial.

**7. Witnesses ⊚⟳277(2)—Cross-examination of defendant, to show injury to arm was not result of rencounter, held proper.**

Where defendant's arm was in bandage when he was testifying, the solicitor was properly permitted on cross-examination to inquire into the cause of the injury, to show that it was not the result of the rencounter with deceased and his sons.

**8. Criminal law ⊚⟳730(3)—Court should reprimand prosecuting attorney for improper conduct, give proper instructions, or order mistrial.**

If the prosecuting attorney, by cross-examination or otherwise, is causing the minds of the jury to be dominated other than by the legal evidence, it is the trial court's duty to correct him by proper reprimand, instructions to the jury, or, if the injury is such that the jury cannot consider the case unbiased, order a mistrial.

**9. Criminal law ⊚⟳1154 — Action respecting prosecuting attorney's misconduct largely in court's discretion, and not reviewed, except for gross misuse.**

Whether the prosecuting attorney shall be reprimanded, proper instruction given to the jury, or a mistrial ordered because of misconduct of the prosecuting attorney is largely in the discretion of the trial judge, and in the absence of gross misuse of such discretion the Court of Appeals will not review his rulings.

**10. Witnesses ⊚⟳337(2), 343—Defendant's bad character may be shown, but must be based on facts antedating the crime.**

When defendant testifies as a witness, he may be impeached by showing his general bad character in the neighborhood where he lived to the time of the trial; but such character must rest on facts antedating the crime for which he is on trial.

**11. Witnesses ⊚⟳343—Opinion of witness as to defendant's bad character should have been excluded, when shown on cross-examination to have been obtained after the crime charged.**

Though evidence as to defendant's bad character was admissible on its face, where it developed on cross-examination that the witness' opinion was obtained after the commission of the crime charged, it should have been excluded.

**12. Criminal law ⊚⟳1169(5)—Evidence of bad character and argument based thereon held cured by instruction.**

The failure to exclude a witness' opinion as to defendant's bad character, shown on cross-examination to have been obtained after the commission of the crime charged, and comment thereon in the solicitor's argument, was cured, where the court stopped the argument and told the jury not to consider such evidence, or any statement in reference thereto.

**13. Criminal law ⊚⟳723(1)—Remark of solicitor that jury should consider deceased's wife and children not ground for reversal.**

Where deceased's wife and children testified on a trial for murder, an isolated remark in the solicitor's argument that the jury should consider them in reaching their verdict was not such an impassioned appeal to the prejudice of the jury as required a reversal, especially where there was no motion to exclude.

**14. Criminal law ⊚⟳766—Instruction properly refused, as submitting question of law as to what constituted self-defense.**

Instruction that, if the jury had a reasonable doubt as to whether defendant acted in self-defense, they should acquit, was properly refused, as submitting the question of law as to what constituted self-defense.

**15. Criminal law ⊚⟳761(6) — Instruction on self-defense held to assume that defendant was a reasonable man.**

Instruction that, if deceased or his sons were attempting to strike defendant, and the circumstances were such as to impress him with the belief that he was in danger of suffering death or grievous bodily harm, and did so impress him, and there did not appear to be any reasonable way of retreat without increasing his danger, the jury should find him not guilty, unless the state had shown beyond a reasonable doubt that the defendant was at fault in bringing on the difficulty, was properly refused, as presupposing that defendant was a reasonable man.

**16. Homicide ⊚⟳286(2)—Instruction as to repelling presumption of malice held properly refused. .**

Instruction that, while the law authorized presumption of malice from use of a deadly weapon, circumstances might repel this presumption, and that if, after considering all the evidence, the jury had a reasonable doubt whether the shot was fired maliciously, they should acquit, was erroneous, and properly refused.

Appeal from Circuit Court, De Kalb County; A. E. Gamble, Judge.

John Windom was convicted of murder in the second degree, and he appeals. Affirmed.

The following charges were refused to the defendant:

(10) "I charge you, gentlemen of the jury, that if you have a reasonable doubt arising out of the evidence as to whether or not the defendant acted in self-defense, and that if this doubt exists in the face of all the evidence, after you have considered all the testimony in the case, then you should acquit the defendant."

(13) "I charge you, gentlemen of the jury, that if you believe from the evidence in this

case that at the time the fatal shot was fired Mr. Black, the deceased, or his sons, or either of them, was attempting to strike the defendant with a stick, and the circumstances were such as to impress the defendant with the belief that he was in danger of suffering death or grievous bodily harm at the hands of the deceased, and that they did so impress him, and there did not appear to be any reasonable way of retreat open to the defendant, without increasing his danger, then you should find the defendant not guilty, unless the state has by the testimony satisfied you beyond all reasonable doubt that the defendant was at fault in bringing on the difficulty."

(15) "I charge you, gentlemen of the jury, that while the law authorizes the presumption of malice from the 'use of a deadly weapon, yet the circumstances surrounding the killing may repel and overcome this presumption, and if, after you have considered all of the evidence in this case, you have a reasonable doubt as to whether the shot was maliciously fired, then you should acquit the defendant."

Baker & Baker, of Ft. Payne, and M. J. Head, of Tallapoosa, for appellant.

The evidence as to what the defendant did at the store was hearsay, and not part of the res gestæ. 11 Ala. App. 30, 65 South. 851; 21 Cyc. 975. The court was in error in permitting the improper cross-examination of the defendant. 16 C. J. 892; 13 Cal. App. 703, 110 Pac. 586. Character evidence must be limited to a time prior to the happening being tried. 16 C. J. 581; 2 Ala. App. 131, 57 South. 51; 190 Ala. 22, 67 South. 583; 14 Ala. 46, 48 Am. Dec. 84; 204 Ala. 687, 87 South. 177. The attempt to cure the errors was not efficacious. 15 Ala. 623. The argument of the solicitor was improper. 17 Ala. App. 679, 88 South. 200; 170 Ala. 522, 54 South. 494; 159 Ala. 444, 48 South. 662. Charge 10 should have been given. 10 Ala. App. 196, 65 South. 199.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAMFORD, J. [1] The statute (Acts 1915, p. 722), amendatory of section 2846 of the Code of 1907, providing for review by appellate courts of action of trial courts in granting or refusing motions for new trials, requires that exception be taken to the decision of the court, and that the substance of the evidence in the case shall be reduced to writing, and also the decision of the court on the motion, and the evidence taken in support of the motion and the decision of the court shall be included in the bill of exceptions. We have carefully examined the bill of exceptions, and do not find any exception reserved to the action of the court in overruling the motion for a new trial. In the absence of such exception, we are without power to consider the motion for a new trial. Ross v. State, 16 Ala. App. 393, 78

South. 309; Stover v. State, 204 Ala. 311, 85 South. 393; Birmingham W. W. Co. v. Justice, 204 Ala. 547, 86 South. 389; Powell v. Folmar, 201 Ala. 271, 78 South. 47; Stokes v. Hinton, 197 Ala. 230, 72 South. 503.

The defendant and two sons of deceased were engaged in a difficulty, a short distance from the store of deceased. Defendant drew a pistol and pointed it at the two sons. At this point one of the sons called to another brother, and told him to run and tell his father to come. This brother ran to the store and informed his father, who immediately looked for a pistol and, failing to find it, caught up a stick and rushed to the assistance of his sons, and, seeing the pistol in defendant's hand pointed at his sons, grabbed hold of the pistol, which was thereupon discharged by defendant, the bullet taking effect in the bowels of deceased. The father and one son grappled with defendant, and all of them fell; the deceased getting possession of the pistol, and afterwards, letting another take it, he fell, as a result of the wound. One Stewart, who was standing by, was asked to assist deceased in rising and to aid in carrying him home, and refused. The wound was mortal, and resulted in death in about two weeks.

[2-4] Soon after deceased was shot, he said he would die as a result of the wound, and several times so stated, evidencing a knowledge and belief in his impending dissolution. The predicate for a dying declaration was amply proven, and the statements of the deceased, where relevant, were properly admitted in evidence. Some three hours before death, the deceased made and signed a statement as to what occurred during the difficulty, and, the proper predicate having been laid, this statement was admissible in evidence; but this admission of this statement did not preclude the admission of other verbal statements made by deceased, where proper predicates had been laid, and where witnesses testified to what the writing contained, such testimony could not, possibly injuriously affect the defendant's rights. If the statements were the same as contained in the writing, such testimony could add nothing to the probative force of the writing; and if the testimony varied the written statement, such testimony would have been beneficial to defendant's case.

[5] What was said and done by the deceased in preparation for the affray, after he was notified by his son, was so close in point of time and place as to be a part of the res gestæ of the difficulty, and was therefore admissible.

[6] The question, asked defendant on cross-examination, "You had not been picking any cotton, had you?" was legitimate, and the objection of defendant to it was properly overruled. Besides, the defendant answered that he had, and, if the answer—

was material at all it was beneficial to defendant.

[7] It appearing that defendant's arm was in a bandage when he was on trial and testifying, it was permissible for the court to allow the solicitor on cross-examination to inquire into the cause of the injury, to show, if it were so, that the injury was not the result of the rencounter with the deceased and his sons. The court by its rulings properly limited the inquiry to material facts, and while some of the questions asked by the solicitor were illegal, and properly so held by the court, the character of the questions are not such as would require a reversal of the case on account of prejudice claimed to have been engendered by the method of cross-examination.

[8, 9] Where the conduct of a prosecuting attorney is such, by the manner and method of cross-examination, or otherwise, as to cause the minds of the jury to be dominated in their conclusions, other than from the legal evidence, it is the duty of the trial court to correct this, either at the time, by a proper reprimand of the attorney and instructions to the jury, or, if the injury is such as, in the opinion of the court, the jury cannot continue in an unbiased consideration of the case, upon motion to discharge the jury and order a mistrial. But these things are largely in the discretion of the trial judge, and in, the absence of a gross misuse of his discretion, in itself evidencing a bias, this court will not interfere or review his rulings. In this case the questions, in themselves, do not indicate bad faith upon the part of the prosecuting attorney, nor do we think the record discloses the defendant's case was injuriously affected thereby. The rule therefore, as cited from Corpus Juris, p. 893, is not applicable.

[10, 11] The court, over the objection and exception of defendant, permitted the state to prove the general bad character of the defendant at the time of the trial, upon the theory, no doubt, that such testimony was alone for the purpose of impeaching the character of defendant for truth and veracity; he having testified as a witness in the case. When a defendant has testified as a witness, the credibility of his testimony may be impeached, like that of any other witness, by the state showing his general bad character in the neighborhood where he lived, to the time of trial. Charley v. State, 204 Ala. 687, 87 South. 177; Smith v. State, 197 Ala. 193, 199 (8), 72 South. 316. But this character must stand or fall upon facts antedating the act for which the defendant is then on trial. Mitchell v. State, 14 Ala. App. 53, 70 South. 991; Smith v. State, 197 Ala. 193, 198 (7), 72 South. 316. The dictum of the court found in Forman's Case, 190 Ala. 22, 27 (5), 67 South. 583, seems to be in conflict with the foregoing rule; but, if so,

18 ALA.APP.—28

the authorities above cited are later in point of time, and seem to us to have been more thoroughly considered. The objection of the defendant to the question, "Do you know the general character of defendant?" and the motion to exclude the answer, that it was bad, were, on the face of the evidence, properly overruled. But on cross-examination of the witness it being developed that the information on which the opinion as to the general character of the defendant was obtained after the commission of the act for which defendant was being tried, it was error for the court to overrule defendant's motion to exclude the testimony. Mitchell's Case, supra.

[12] However, after the evidence was closed, and the solicitor in his opening argument began to comment upon the testimony as to defendant's bad character, the court, ex mero motu, stopped the argument and said:

"Gentlemen of the jury, the testimony of the witnesses for the state relative to the bad character of the defendant is excluded, and not to be considered by you in the case one way or the other; also any statement made by counsel with reference to the character of the defendant in his argument is excluded, and not to be considered by you, as well as the testimony of the witnesses with reference to the character of the defendant."

This was a correction by the court of the error it had heretofore made, and the action of the court in correcting the error was sufficient to eradicate the effect of the testimony, and the argument based thereon, so as not to injuriously affect the defendant's case. Hill v. State, 194 Ala. 11, 69 South. 941, 2 A. L. R. 509; Maryland Gas Co. v. McCallum, 200 Ala. 154, 75 South. 902; Watson v. Adams, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565; Brand v. State, 13 Ala. App. 390, 69 South. 379; 13 Michie's Digest, 200, § 1053 (1).

[13] In the course of his closing argument to the jury, the solicitor said:

"In reaching your verdict you should consider the widow of George Black and his orphan children."

The bill of exceptions recites:

"The defendant then and there objected to the statement of the solicitor," etc.

But no motion was made to exclude the remark. An isolated remark, such as the above, made in the course of an argument in a murder case, where the widow and children of the deceased had testified, without more, does not show such an impassioned appeal to the prejudice of the jury as to constitute reversible error. Besides, no motion was made to exclude the remark of the solicitor, and in the case of Birmingham Ry., L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543, and reaf-

firmed in Sharp v. State, 193 Ala. 22, 69 South. 122, the court held:

"The effect of our decisions is that a mere objection to already spoken words does not reach the evil aimed at, and that the court must be appealed to to exclude them from the consideration of the jury, failing which there is nothing presented for review by an exception."

Moreover, the remark does not come within the rule laid down in Gardner's Case, 17 Ala. App. 589, 87 South. 885; Bridgeforth v. State, 16 Ala. App. 584, 80 South. 158.

[14] Charge 10 submits to the jury as a question of law as to what it takes to constitute self-defense, and for this reason is bad.

[15] Charge 13 presupposes the defendant was a reasonable man. The correct rule defining self-defense had already been given by the court in its oral charge and in written charges 5, 11, and 12, given at the request of defendant.

[16] Charge 15 is not insisted on, and its refusal is so apparently free from error as not to require comment.

As has been already shown, supra, no exception having been reserved to the action of the court in overruling the motion for a new trial, we are without power to consider it.

We find no error in the record, and the judgment is affirmed.

Affirmed.

---

⏁For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes